Daniel DEIKE, Relator,

v.

Gopher SMELTING, Respondent,

Commissioner of Jobs and Training, Respondent.

No. CX–87–966.

Court of Appeals of Minnesota.

Oct. 13, 1987.

Daniel Deike, Eagan, pro se.

James V. Roth, Minneapolis, for Gopher Smelting, respondent.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training, respondent.

Considered and decided by NORTON, P.J., and MULALLY* and LOMMEN,* JJ., with oral argument waived.

## OPINION

NORTON, Judge.

Relator Daniel Deike seeks review of a determination that he is disqualified from receiving unemployment compensation benefits because he engaged in misconduct when he disregarded his supervisor's orders and walked off the job. We affirm.

## FACTS

Daniel Deike was employed as a maintenance worker for the Gopher Smelting and Refining Company ("Gopher") from February 15, 1985 through December 3, 1986. He worked the 4:00 p.m. to 12:00 a.m. shift.

On June 18, 1986, Deike received a verbal warning for tardiness, and on July 24 he received a written warning for tardiness.

Deike was late for work four times in August, seven times in September, seven times in October, and four times in November. On the fourth occasion in November, which occurred on November 28, Deike called his plant manager and informed him that he would be in late because he needed to pick up parts for his car. Deike finally reported for work at 9:34 p.m., instead of 4:00 as scheduled.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

On December 2, Gopher's personnel manager called Deike into his office after Deike's shift began, gave Deike a second written warning for tardiness, and informed him that he would be suspended from work for one day. Gopher's policy was to schedule suspensions according to production needs, and the personnel manager advised Deike that his suspension would be scheduled for December 4. Deike became upset, stated that he would serve his suspension that same day, December 2, and went to the locker room to change into his street clothes. The personnel manager followed Deike, and informed him he could be terminated if he walked off the job. Deike indicated that he understood, and asked if he was in fact being terminated. The personnel manager responded that no final decision had yet been made, and Deike left work. The following day, Gopher discharged Deike.

Deike applied for unemployment compensation benefits, and his claim was initially allowed, on the basis that he had not engaged in misconduct. Gopher appealed to a Department referee, who conducted a hearing on the misconduct issue. At the hearing, Gopher introduced into evidence portions of an employee handbook, which provided that an employee's refusal or failure to perform or follow directions or instructions could result in immediate dismissal.

Following the hearing, the referee concluded that Deike's actions on December 2 constituted misconduct. On appeal, a Commissioner's representative affirmed.

### ISSUE

Did Deike's actions constitute misconduct disqualifying him from the receipt of unemployment compensation benefits?

### ANALYSIS

An individual who has engaged in misconduct is disqualified from receiving unemployment compensation benefits. Minn. Stat. § 268.09, subd. 1(2) (1986). The Minnesota courts have held that an employee's insubordination may constitute misconduct. *See, e.g., Blom v. Madsen's Enter-* *prises, Inc.,* 298 Minn. 573, 574, 215 N.W.2d 791, 792 (1974) (employee refused to perform assigned duties); *Poepke v. Downtown Standard,* 356 N.W.2d 812, 813 (Minn.Ct.App.1984) (employee refused to work Saturday as scheduled); *Snodgrass v. Oxford Properties, Inc.,* 354 N.W.2d 79, 80 (Minn.Ct.App.1984) (employee refused to talk with his employer or take direction); *Daniels v. Gnan Trucking,* 352 N.W.2d 815, 816 (Minn.Ct.App.1984) (employee deliberately refused to unload trailer).

The question whether an employee engaged in misconduct is one of law; thus, this court need not defer to the Commissioner's decision. *Deering v. Unitog Rental Services,* 381 N.W.2d 486, 487 (Minn.Ct.App.1986). The Commissioner's findings of fact, however, are entitled to deference. *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331, 332 (Minn.Ct.App.1984). The employer has the burden of proving misconduct. *Sandstrom v. Douglas Machine Corp.,* 372 N.W.2d 89, 91 (Minn.Ct.App.1985).

Here, the facts as found by the Commissioner's representative support a determination of misconduct. Despite the personnel manager's instructions to Deike on December 2 that he was to work that day and serve his suspension on December 4, Deike walked off the job, knowing that his employment could be terminated for his actions.

On appeal, Deike argues that his union contract prohibited Gopher from terminating him unless Gopher notified the union in writing before he was suspended or discharged. The pages of the union contract that Deike has appended to his brief are not a part of the record, and therefore cannot be considered by this court on appeal. *McKee v. Cub Foods, Inc.,* 380 N.W.2d 233, 235 (Minn.Ct.App. 1986). On the other hand, the employee handbook, which Gopher did introduce into evidence, states that an employee may be immediately discharged for refusing or failing to perform or follow directions or instructions by Gopher management.

Deike also claims that he had no opportunity to seek union advice before

leaving on December 2, 1986, since the union office was closed after 4:00 p.m. As the Commissioner's representative noted, Deike could have worked on December 2, 1986, and then filed a grievance with his union.

Deike's remaining claims were not raised below, and are therefore inappropriately raised at this level. *Ruzynski v. Cub Foods, Inc.,* 378 N.W.2d 660, 663 (Minn.Ct. App.1985).

## DECISION

The Commissioner properly concluded that Deike engaged in disqualifying misconduct.

Affirmed.