**STATE of Minnesota By James E. ULLAND, Commissioner of Commerce, Respondent,**

v.

**INTERNATIONAL ASSOCIATION OF ENTREPRENEURS OF AMERICA, et al., Appellants,**

**International Association of Entrepreneurs of America Benefit Trust, Appellant.**

No. C1-94-1846.

Court of Appeals of Minnesota.

Feb. 7, 1995.

Review Denied April 18, 1995.

Hubert H. Humphrey, III, Atty. Gen. and Prentiss Cox, Asst. Atty. Gen., St. Paul, for State of Minn. by James E. Ulland, Commissioner of Commerce, respondent.

Charles B. Rogers and Marian M. Durkin, Briggs & Morgan, P.A., Minneapolis, for In-tern. Ass'n of Entrepreneurs of America, et al., appellants.

Steven Z. Kaplan and Richard D. Snyder, Fredrikson & Byron, P.A., Minneapolis, for Intern. Ass'n of Entrepreneurs of America Benefit Trust, appellant.

Considered and decided by SCHUMACHER, P.J., and RANDALL and MANSUR *, JJ.

## OPINION

MARTIN J. MANSUR, Judge.

Appellants International Association of Entrepreneurs of America Benefit Trust (Trust), International Association of Entrepreneurs of America (Association), and IAEA, Inc. contend that the district court abused discretion when it granted respondent Commissioner of Commerce temporary injunctive relief on the sole basis that appellants violated the Commissioner's amended cease and desist order.

## FACTS

The Trust accepts contributions in Tennessee from member employers nationwide, and administers a trust for what it describes as an employee welfare benefit plan for health, dental, hospital, life, accidental death, and workers' compensation benefits. The Association is a non-profit membership organization headquartered in Texas, which is comprised of employers nationwide. And IAEA, Inc. is a Texas corporation providing services and benefits to members of the Association.

The Commissioner began investigating appellants in July 1993 and issued an order for written statement, production of documents and report of sales to IAEA, Inc. concerning its products and sales. IAEA, Inc. did not respond but the Trust did. Unhappy with the response and appellants' refusal to stop transacting what was alleged to be insurance business in Minnesota, the Commissioner issued, pursuant to Minn.Stat. § 45.027, subd.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

5 (Supp.1993),[1] a cease and desist order and notice of right to appeal, which was amended on March 16, 1994. The amended cease and desist order prohibited appellants from conducting insurance business in violation of Minn.Stat. §§ 60A.07, 60K.02, 72A.41, 79.56 (1992).

Appellants Association and IAEA, Inc. claim to have never received certified notice of the amended cease and desist order by certified mail. The Trust, however, did receive notice and timely requested a hearing before the Commissioner. That hearing was stayed pending this appeal.

Relying on Minn.Stat. § 45.027, subd. 5, the Commissioner sought temporary injunctive relief in the district court to preclude the Trust and Association from violating the amended cease and desist order. The district court granted a temporary injunction against all three appellants on the sole basis that the Trust and the Association had violated the Commissioner's amended cease and desist order.

## ISSUE

Did the district court abuse discretion when it temporarily enjoined appellants from doing business in Minnesota based solely on their violation of the Commissioner's amended cease and desist order?

## ANALYSIS

### 1. Standard of Review

■ "A decision on whether to grant a temporary injunction is left to the discretion of the trial court and will not be overturned on review absent a clear abuse of that discretion." *Carl Bolander & Sons Co. v. City of Mpls.*, 502 N.W.2d 203, 209 (Minn.1993). "[T]he trial court has broad discretion in deciding whether to grant a temporary injunction, and the *Dahlberg* factors are to be applied in determining whether the court has abused its discretion." *Crowley Co. v. Met-*

*ropolitan Airports Comm'n*, 394 N.W.2d 542, 545 (Minn.App.1986). Where the trial court fails to analyze the *Dahlberg* factors in granting a temporary injunction, the court commits error. *M.G.M. Liquor Warehouse Int'l, Inc. v. Forsland*, 371 N.W.2d 75, 77 (Minn. App.1985). In this case, the district court made no *Dahlberg* findings for this court to review for abuse of discretion.

### 2. Commissioner's Authority

The Commissioner of Commerce is charged with enforcing the insurance laws of this state. Minn.Stat. §§ 60A.07, 60K.02, 72A.33, 72A.41, 79.56 (1992 & Supp.1993). In this case, the Commissioner invoked his regulatory powers pursuant to Minn.Stat. § 45.027, subd. 5, which provides in part:

> Subd. 5. **Legal actions; injunctions; cease and desist orders.** Whenever it appears to the commissioner that any person has engaged or is about to engage in any act or practice constituting a violation of any law, rule, or order related to the duties and responsibilities entrusted to the commissioner, the commissioner has the following powers: (1) the commissioner may bring an action * * * to enjoin the acts or practices and to enforce compliance * * *. *Upon a proper showing,* a permanent or temporary injunction, restraining order, or other appropriate relief must be granted; (2) the commissioner may issue and cause to be served upon the person an order requiring the person to cease and desist from violations. The order must be calculated to give reasonable notice of the rights of the person to request a hearing and must state the reasons for the entry of the order.

(Emphasis added.)

The Commissioner, therefore, has two ways under Minn.Stat. § 45.027, subd. 5 to seek compliance with Minnesota insurance statutes, by injunctive relief or by a cease and desist order.[2] If he issues a cease and

1. Although the Commissioner issued the original and amended cease and desist orders pursuant to Minn.Stat. § 45.027, subd. 5 (1992), we note that the statute was supplemented in 1993 and as a result we apply Minn.Stat. § 45.027, subd. 5 (Supp.1993) to the facts of this case.

2. We note that the Commissioner also could have sought injunctive relief under Minn.Stat. § 72A.42 (1992), which provides a remedy when the Commissioner believes a party to be violating or about to violate Minn.Stat. § 72A.41.

desist order, the Commissioner must provide the party an opportunity to be heard. Minn. Stat. § 45.027, subd. 5. If, however, he seeks an injunction, the Commissioner must make a "proper showing." *Id.*

### A. Cease and Desist Order

If the party against which the cease and desist order was issued violates that order, the party risks civil penalties. Minn.Stat. § 45.027, subd. 6 (Supp.1993). The Trust admits to violating the amended cease and desist order and the district court found that the Association continued to act in violation of it. Rather than seek civil penalties for violation of the amended cease and desist order, the Commissioner sought a temporary injunction.

■ In their defense, appellants assert that the amended cease and desist order is not a valid exercise of the Commissioner's authority because they are protected under the federal ERISA statutes. *See* 29 U.S.C. §§ 1001–1461 (1985 & Supp.1994). Appellants argue they should have been allowed to challenge the validity of the amended cease and desist order in the enforcement proceedings. The Commissioner argues, however, that appellants may not challenge the validity of his orders. The Commissioner confuses his administrative authority with that of the judiciary. *State by Spannaus v. Lloyd A. Fry Roofing Co.,* 310 Minn. 528, 530, 246 N.W.2d 696, 698 (1976).

Minnesota courts have refused to "accord to administrative decisions the same presumptive validity which is traditionally accorded to court-issued injunctions." *Id.* "[A]ny action of an administrative agency which is in excess of its statutory power is subject to collateral attack" in an enforcement proceeding. *Id.* (citation omitted). The general rule is that

> a defendant in a civil or criminal proceeding brought to enforce an administrative order or regulation may defend on the ground of invalidity of the order or regulation * * *. The natural assumption is that one may not be held civilly or criminally liable for violating an invalid order or regulation. The tradition is deeply embedded

that even statutes may be challenged by resisting enforcement.

*Id.* at 531, 246 N.W.2d at 698 (citation omitted). Appellants properly sought, but were denied, the opportunity to challenge the validity of the Commissioner's amended cease and desist order in the enforcement proceeding. As a result, the Commissioner was able to temporarily enjoin appellants from conducting business in this state without any showing that their actions violated Minnesota insurance law.

### B. Injunction

■ If, however, the Commissioner seeks to enforce the laws of this state with a temporary injunction, he must make a "proper showing". Minn.Stat. § 45.027, subd. 5. The parties disagree over what a "proper showing" is. The Commissioner argues that a "proper showing" exists where a party violates a cease and desist order, but he fails to address what a "proper showing" would be if no cease and desist order were issued prior to seeking a temporary injunction. The Commissioner cites several federal cases and a case from Oregon to describe what a "proper showing" should be. These cases, however, do not involve circumstances where an injunction was issued based on the violation of a cease and desist order. Furthermore, this court is not bound by precedent from other states or the federal courts. *State v. Thompson,* 273 Minn. 1, 29, 139 N.W.2d 490, 511, *cert. denied,* 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966); *Sonenstahl v. L.E.L.S., Inc.,* 372 N.W.2d 1, 4 (Minn.App.1985) ("Although federal decisions may be persuasive where the Minnesota courts have not addressed a subject, in the present instance the Minnesota decisions are dispositive.").

■ Appellants argue that a "proper showing" is made upon an evaluation of the *Dahlberg* factors:

1. The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.

2. The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.

3. The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.

4. The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.

5. The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965).

The Commissioner argues that the *Dahlberg* factors do not apply where a statute provides for injunctive relief. *Wadena Implement Co. v. Deere & Co.*, 480 N.W.2d 383, 389 (Minn.App.1992), *pet. for rev. denied* (Minn. Mar. 26, 1992). In *Wadena Implement Co.*, this court held that the *Dahlberg* factors must be considered except where a statute provides for injunctive relief. *Id.* 480 N.W.2d at 388–89. However, in *Wadena Implement Co.*, we determined that where injunctive relief is authorized by statute, an injunction may be granted provided that: (1) the prerequisites for the injunctive remedy have been shown; and (2) the injunction would fulfill the legislature's purpose. *Id.* at 389.

The prerequisites in *Wadena Implement Co.* involved a showing that the defendant violated the substantive statute sought to be enforced. Similarly, in this case the Commissioner must show that appellants violated or are about to violate Minnesota insurance law. The legislative purpose behind injunctive relief is to provide the Commissioner the power to enforce the laws he is charged with administering. Minn.Stat. § 45.027, subd. 5. But this purpose assumes that the party enjoined has violated or is about to violate those laws—a showing that was never made in this case.

In *Wadena Implement Co.*, the parties did not dispute the applicability of the underlying law sought to be enforced. By contrast, where the parties do dispute the applicability of the underlying statute, as is the case here, statutory entitlement to a temporary injunc-

tion is not automatic and the trial court must consider all five *Dahlberg* factors. *Pacific Equip. & Irrigation, Inc. v. Toro Co.*, 519 N.W.2d 911, 918 (Minn.App.1994), *pet. for rev. denied* (Minn. Sept. 16, 1994). Here, the crux of the parties' dispute is whether appellants are subject to the insurance laws the Commissioner seeks to enforce. As a result, according to this court's decision in *Toro*, statutory entitlement to a temporary injunction is not automatic and the court must make *Dahlberg* findings.

We note that appellants Association and IAEA, Inc. argue that they were not properly served by certified mail with notice of the amended cease and desist order and right to appeal. We need not address this issue because service of the amended cease and desist order is not relevant to a consideration of the *Dahlberg* findings. In addition, IAEA, Inc. claims it was not properly joined as a party to the injunction. We note that IAEA, Inc. was not named as a party in the summons and complaint nor served with notice. We find that the district court is in a better position to address this issue and draw the court's attention to Minn.R.Civ.P. 65.02(a) to guide its analysis on remand.

## DECISION

We conclude that the district court abused discretion in granting a temporary injunction on the ground that appellants violated the Commissioner's amended cease and desist order. Appellants were entitled to challenge the validity of the order and the court was required to consider the *Dahlberg* factors. We reverse the district court's order granting a temporary injunction and remand for *Dahlberg* findings.

**Reversed and remanded.**